I've got Mr. Marshall here live on behalf of the state. And I've got Ms. Cebulski, is that correct? That is correct, thank you. I've got one right, I was 0 for 4 last time we were here. 2 for 2. I've done okay this morning, except I boxed the injury. But we'll get through. So, listen, so defense counsel is with us hybrid via Zoom. And are you ready to proceed? I am ready to proceed. Before we start, everybody can see and hear her okay? Yes. Okay. Then go right ahead. Great. Good morning, Your Honor, Opposing Counsel, and may it please the Court. My name is Amy Cebulski with the Office of the State Appellate Timer, and I represent the appellant. Even as I appear before you today, no party can definitively say whether an obstructing or resistant conviction is an appeal. The state charged full offenses in one count and then revoking both obstructing and resisting without ever pointing itself to one theory. Yet now on appeal, the state asks this Court to step into the jury box and speculate which of the two offenses the jury may have seen in a legal or a shock test. At issue here, however, is not whether the evidence looks reasonably sufficient for conviction, but whether a conviction for obstructing or resisting can stand in the face of due process and double jeopardy and concerns due to three issues. First, the insufficient charging document. Second, the inaccurate jury instructions. And third, a verdict from a jury that was unsure of what obstructing or resisting even meant. First, because obstructing and resisting are legally distinct offenses, the state cannot hedge its bets by charging both offenses in one count. Instead, it must charge either obstructing or resisting and then tie it to the authorized act or arrest. As outlined in the brief, the information instead is deficient in multiple ways. The state has functionally conceded that the information is deficient and instead asks this Court to pretend that it had charged the offense correctly. While prejudice from the deficient charging instrument must be proven here, the concerns regarding double jeopardy and the harm to Mr. Hermansen's defense were apparent throughout the trial, giving this Court the base to reverse and vacate the conviction. From the information to the end of trial, the deficient information prejudices Mr. Hermansen's defense as the state pursued a conviction on either obstructing or resisting. Thus, the state gained the benefit of a scattershot prosecution where it could present multiple alleged instances of obstructing or resisting as well as multiple authorized acts. By failing to tie one offense to one act or count, the state could then secure a conviction in a combination of acts that might otherwise have mandated acquittal, such as a conviction based on resisting when he was not under arrest, resisting when he did not know he was under arrest, impeding in a non-material way, or if it was one that is not covered under the statute. While obstructing and resisting may seem connected, we can look to familiar examples of aggregated battery subsections based on location, weapon, or victim status and clarity. Just as the subsections on aggregated battery are not interchangeable due to their separate elements that the state has approved, a conviction for obstruction is not interchangeable with one for resisting. Charging and arguing both obstruction and one charge would actually be worse than charging two kinds of aggregated battery, as whether conduct is obstructive or resisting requires multiple subjective interpretations from the jury rather than a simple showing of the existence of fact, such as the victim's age. Rather than focusing on what the state is actually alleging, Mr. Perkins does have to defend against any and all potential conduct contained in the video, even if it's technically non-criminal. In addition to prejudice in the defense, targeting the defendant in the way the state did here creates grave double jeopardy consensus. The information and verdict in this case were vague enough that the state could hypothetically pursue charges for the same criminal acts arguing a trial on an alternate theory. For example, if the jury found him guilty of resisting but would have acquitted on obstruction and the court sent him back for a new trial where the state found him to pursue only obstruction, he would functionally be subjected to a second trial on the same conduct. The state's own argument on appeal actually highlights how the division of information put Mr. Koumegantsef at risk of double jeopardy. The state now argues that it was obstruction and not resisting that was at issue in the trial, and that the authorized act was a subversive warning despite no stipulation existing, and despite the state arguing multiple authorized acts connected to multiple alleged criminal. Essentially, it is asking this court to ignore the proceedings below and conduct a new trial on appeal because it post hoc chose which offense it actually prosecuted. Should this conduct be condoned, there would be nothing stopping the state from pursuing the same tactic at the trial level, only deciding it was charging obstruction and arrest after trial before pursuing new charges of acts that were referenced but apparently not at issue at trial. The prejudicial effect of the division of information was intensified in the other two reversible errors at trial, the inaccurate jury instructions and the unanswered jury questions, which each on their own would require a new trial. Here, the inaccurate jury instructions did nothing to reduce confusion on whether the state was pursuing an obstruction or resisting charge, as it left out key details from the updates that went into effect in 2023. For example, the instructions did not separate the offenses, they did not add the element of arrest to existing, nor did it mention subsection 1D, which further requires the arrest to be pursued to an underlying defense for which the person was initially subject to arrest. IPIs are not available, and as outlined in the briefing, the Oklahoma Supreme Court has explicitly blessed the review of IPIs through court cases such as these. To obstruct the jury on the old law would allow them to infamously convict on a wider scope of conduct than intended by the legislature, while eliminating the ability to acquit on combinations of conduct and acts that would otherwise not support conviction. This made the trial fundamentally unfair and thus requires reversing. Further, in issue 3, the court's refusal to answer the jurors' legal questions demonstrates that the confusion in the charging documents and instructions followed the jury into deliberations. The jury asked three questions, including for the definitions of obstructing or resisting, what a terrorist act was, and if someone must produce a license in the past. These three questions revealed three things. One, the jury did not know which offense they were supposed to consider. Two, that the jury did not know what authorized act Mr. Hermanson was accused of resisting or obstructing. And three, that the jury was unsure of what either obstructing or resisting even meant. The jury's confusion becomes even more concerning in the context that it is told four times that this will be a one-day trial. Once the court explicitly instructs the jury that we didn't expect this to be a one-day trial, you will get the case this afternoon, you will begin deliberations, and finish those up today. The jury may have felt like it was its job to come to a verdict that day, and in fact the jury convicted at 4.58 p.m. that day. Mr. Hermanson has a due process right to know what he was convicted of. Based on the trial court's failure to answer the jury's questions, as well as the inaccurate jury instructions, a new trial at the very least is warranted. Given the danger of double-debriding, however, and the prejudice to Mr. Hermanson's defense from the deficient charging document, Mr. Hermanson asks this court to reverse and vacate his position. Do your honors have any questions? Justice Barber? Justice Hackett? Not at this time, thank you. Well, thank you, counsel. Obviously, you'll have your time for rebuttal. Mr. Martin. Good morning, your honors. It's court, counsel. Do you have any questions before I begin? I'm just going to use my time today to address a few things she raised in her reply brief. I always get the chance to do that. She takes issue with the State's representation that it was all that stipulated that the Officer's Authorized Act was to serve the outstanding warrant. Says it's a long way of saying it's not stipulated and it warps the record. Well, I'll admit that it was not stipulated. That's why I said all of it, but I will not concede that I It was a shorter way of saying it was undisputed. The jury couldn't have been confused about it. Most significantly, I think, part of the defense was to emphasize that the warrant was ultimately served and thus the Unauthorized Act or the Authorized Act was never truly obstructed. On page 19, I cite the opening statements, Officer's testimony, the cross, and page 166 is well to that. And that's where counsel specifically rhetorically asked the jury, was the defendant knowingly obstructing? Was he knowingly impeding the serving of the warrant? She might say the jury was confused because of this driver's license question, but that was just referenced in the State's closing argument. I guess I'll jump to that one, but this point about the or the Terry stop. The parties throughout the whole trial, Terry, Terry, Terry, it's all over the video. It was never described to them, so I understand why they would ask what the heck's a Terry stop. On page 6, reply brief, the State does not respond to the argument. The information was void for duplicity. It did respond on page 16. It's a rather brief, starts the defendant's intimations and it ends with the State asking the court to compare Lauer and Hughes. Similarly, fails to respond that he was prejudiced beyond making a bare assertion that his ability to raise a defense was not impacted and the information was sufficient to bar further prosecution. That's not really a bare assertion. That's a line from a Otherwise, on issue one, I would stand on my arguments that resisting and resisted could be stricken under the applicable law to hold Stillmore standard and surplusage and that there was no confusion as to what the defendant was charged against. Attorney Marshall, can I stop you there for a second? Of course, Your Honor. What's the substance of that argument, though? If in fact the charging document did contain that awardee, our issue isn't what if it hadn't been there. The fact is it was there. I don't know if we can say that's surplusage at that point, can we? I think when it says resisting or obstructing, and then they basically charged what used to just be what is now just obstructing. It used to be called resisting or obstructing. They chopped it and they made resisting a specific offense that requires arrest on an underlying offense. So I think everyone thought they were still proceeding under the old version and there was no confusion about that. On appeal is when this theory arrives that, oh, they used this word, they used that word, oh, they charged two separate crimes. He didn't know what the heck he was defending against. No. It was very specific. But the issue is that the trial proceeded with a document charging under the old statute, which had wording different than the statute in effect at the time of the offense. But the wording kept in place the substance of the prior enactment and the only word that remained that shouldn't be there was resisting. And that was even in the alternative, resisting or obstructing. And since obstructing includes all acts that could constitute resisting, because it's much more expansive, it would have just been charged the same way without that word resisting or resisting. Well, going back to the attorney for the defendant's argument, what was this defendant convicted of? Obstructing. Obstructing a peace officer in the performance of an authorized duty under subsection, I think it's now B, they cut it A and B, so it would be B. The charging document says resisting or obstructing. How are we to know? From the remainder of the charge and how it's worded. It's exactly how it used to be resisting and obstructing. Now that's obstructing and resisting is resisting a specific arrest. They basically cut it into two different offenses. And here we know it's obstructing because resisting doesn't have to be there. He can resist and it's set out in the charge and it's made exactly what he did. And all those constitute obstruction. He was not charged with resisting an arrest. He was charged with resisting or obstructing the performance of an authorized act, which is now just obstructing the performance of an authorized act. So when he challenged it, now if he would have raised this in the trial court and made a deal about it, they could have amended it. But when he challenged it the first time on appeal under Pohl's-Gilmore standard and under the surplusage, you look at it and say, okay, did he know what was going on here? Can we strike these words and make no difference? And I'm convinced that we can. Back up what you said. I think that's one of your main arguments on this issue is that the defense counsel did not file any type of motion challenging the charge, didn't file for a bill to put in particulars. I don't know if it's in or maybe this is my note. It seems like the argument is almost by failing to do that by proceeding to trial, the defendants either forfeited the issue or invited the issue by proceeding in one manner and then now on appeal arguing against it. And that is, Your Honor, I believe that's why Justice Goldenhurst's dad did the Pohl's-Gilmore standard way back in the day. They're like, it's different ballgame when you're waiting until on appeal and say, oh, this is messed up, that's messed up. It's like what is it? The ability to prepare your defense and the ability to bar future prosecution. And I think we've got both out here in spades. I can think of something else. Oh yeah, also trial counsel, I think it was one of the little sidebars. He even referred to this. This is an obstruction offense argument here. I don't think there was any confusion. I think the confusion has been introduced on appeal. Issue two, I didn't really have anything to say about that. I figured it follows issue one. Issue three, the jury notes. I think that's probably the most interesting one. I can't cite a proposition that says it takes two notes to show confusion, as she notes. But read that she cites doesn't really make any sense on that because it says the jury need not re-ask a question repeatedly to find error in the circuit court's response. Okay, I accept that but I don't think that equates to as soon as the jury asks one question indicating some kind of confusion, you've got to answer it. And I'm about to discuss, I think that the trend is going to go away from that. In Lewis, which we did cite, they said the jury's two questions regarding a definition of three material words made it explicit they were having difficulties. And three paragraphs later they re-emphasized two notes in quick succession established it was confused. We don't have that here. We have questions that were invited, in my opinion, by the comments, by the arguments of counsel. The jury took its job seriously. If they would ask the question twice, maybe. And lastly, before my time runs out, she calls Keefe v. Wade, which I cited at the end, irrelevant and it's holding us in jeopardy. Well, of course, it's on appeal. But I think it's very relevant. And they did short shrift of all the prior cases prior to 1996, which was Landauer, Childs, Oden, Comedian, Browder. They kind of summarily distinguished those. And then they talk about two more recent cases, Sperry and Coots. And that's going to be before the Supreme Court. They granted it in September. That should provide some guidance on this. Because I'm just speculating, but maybe they just looked at all that old stuff. Or they read the dissent in Landauer, which makes a lot of sense to me. And they said, you know what? We're just going to kind of summarily dispose of those, go on to this, and we'll see what maybe the Supreme Court says. But this is business about a jury asking one question. And then you get in there and start retooling it. And in the other cases, it's usually like more complicated issues before them or the jury instructions were incomplete. Sometimes jacked like that. But just not, I think these three questions are not the ones that are out there asked. I think the jury paid close attention and wanted to get it right. I hope everything else is adequately covered in my brief. If there are any questions. I do want to go back to that earlier question. Yes, sir. You cited a reference to a formal justice, or you cited a case or two and it went back further quickly. But those cases address the adequacy of a charging document to inform a defendant sufficient to prepare defense to those charges. They don't address what I think might be the facts in this case. The defendant is charged under a statute that is no longer in effect. That is correct. But the legislature retained and kept in effect the substance of what was previously resisting and obstructing. They just pocketed it under obstructing. And that's addressed in the brief. We all read your briefs. I understand that. I'm just not sure how we get around the fact that while what you say is true, and the legislature did keep some of the language, they specifically in the next enactment separated and redefined resisting. Yes, sir. So it no longer reads resisting or obstructing. It reads resisting arrest. Specifically with that. Yes, sir. And on the surpluses, I think the way it was charged, the manner it was charged, they obviously weren't aware of the amendment. So if you look at the charge as it was, if there was any confusion, they could just say resisting and look, it's obstructing under the new statute. That was my point I was trying to make, I guess. I understand. Thank you. Thank you, Your Honor. Thank you for your time. I'll ask if you affirm. Yes, sir. Your rebuttal. I just wanted to briefly read the information to highlight how striking resisting, resisted from the information still leaves questions about whether he was convicted of resisting or obstructing. Because counsel did not continue reading the information where it says, in that said defendant refused to obey the officer's verbal commands, pulled away from the officer, and continued to actively physically resist the officer's attempts to control the defendant. From the very start of the case, in the charging document, to the state's closing, the state proceeded on both resisting and obstructing, and I think the record is very, very clear on that. And unless Your Honors have any other further questions, we just ask that this Court reverse and vacate the conviction because Mr. Hernandez has the due process right to know what he was convicted of, and the state cannot charge a defendant in this destructive way and then ask that this Court go back and fill in the blanks and choose which conviction the jury convicted on when we don't have any of that information. Thank you. Well thank you counsel. Just a second? No sir, thank you. All right, thank you counsel. Obviously we'll take the matter under advisement. We will issue an order in due course.